UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                     :

EAGLE EQUITY FUNDS, LLC ("Eagle"), AHG       :
VERMOGENSVERWALTUNGSGESELLSCHAFT    :
MB, and AAE MANAGEMENT FOR ENERGY      :
EQUIPMENT LLC                               :                   19-CV-9344 (JMF)
                                                       :
                     Plaintiffs,             :                 OPINION AND ORDER
                                                       :
         -v-                                  :
                                                       :
CENTRAIS ELÉTRICAS BRASILEIRAS S/A  –       :
ELETROBRAS, WILSON PINTO FERREIRA, JR., and  :
ELVIRA BARACHUY CAVALCANTI PRESTA     :
                                                       :
                     Defendants.           :
                                                     :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiffs Eagle Equity Funds, LLC ("Eagle"), AHG Vermogensverwaltungsgesellschaft

MB ("AHG"), and AAE Management for Energy Equipment LLC ("AAE") bring this suit against

the Brazilian company Centrais Elétricas Brasileiras S/A – Eletrobras ("Eletrobras") and two

Eletrobras executives, Wilson Pinto Ferreira, Jr., and Elvira Barachuy Cavalcanti Presta (the

"Individual Defendants").  For the better part of the last decade, Plaintiffs have been unsuccessfully

litigating the enforceability of certain Eletrobras securities (the "Bearer Bonds"), which Plaintiffs

own and value at over $5 billion, in the Brazilian courts; Eletrobras maintains that these securities

are unenforceable.  In 2019, Plaintiffs purchased Eletrobras American Depository Receipts

("ADRs") on the New York Stock Exchange ("NYSE").

Plaintiffs bring securities fraud claims for injunctive relief under the 1934 Securities

Exchange Act ("Exchange Act") and rules promulgated thereunder, as well as a handful of claims

under state law.  At bottom, Plaintiffs seek to have this Court do what the Brazilian courts have

heretofore been unwilling to: declare that the Bearer Bonds are enforceable and order Eletrobras to

pay them for the Bearer Bonds.  Defendants now move, pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, to dismiss Plaintiffs' claims.  ECF No. 36.  For the reasons that follow,

their motion is granted and the Complaint is dismissed.

## BACKGROUND

The following facts are taken from the First Amended Complaint ("Complaint") and

assumed to be true for the purposes of this motion.  *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 513

(2d Cir. 2013).

Eletrobras is Brazil's dominant electrical utility company, the controlling shareholder of

which is the Brazilian government.  ECF No. 33 ("FAC"), ¶¶ 36, 38.  Between 1962 and 1993, the

Brazilian government — looking to raise funds to expand Brazil's electricity sector — passed

legislation to require certain electricity end-users to make compulsory loans (the "Compulsory Loan

Obligations") to Eletrobras by paying a specified percentage of each electricity invoice.  *Id.* ¶¶ 70-

78.  This program proceeded in two phases: First, between 1962 and 1976, Eletrobras issued the

Bearer Bonds to consumers in return for their credits.  *Id.* ¶ 71.  Then, in the second phase — lasting

from 1976 to 1993 — Eletrobras recorded credits in book entry form (the "Compulsory Loan

Credits").  *Id.* ¶ 77.

Between 2008 and 2013, Plaintiffs acquired a total of 694 Bearer Bonds, which they valued

at $5.15 billion as of December 31, 2018.  *Id.*  ¶¶ 24, 86-87, 89.  Eletrobras, however, maintains that

the Bearer Bonds are invalid and unenforceable.  *Id.* ¶ 90.  That position has, in turn, spawned

extensive litigation in the Brazilian courts, brought by Plaintiffs and other parties.  *Id.* ¶¶ 92-118.  In

2013, for example, Eagle filed suit against Eletrobras in federal district court in Rio de Janeiro.  *Id.*

¶ 95.  In 2015, the Brazilian court ordered Eagle to deposit a bond for approximately $250 million

or prove the existence of such assets in Brazil that could assure payment of the same amount; this

requirement "effect[ively] . . . prevent[ed] Eagle from prosecuting its claims."  *Id.* ¶ 102.  Eagle's

suit is currently on appeal before the Brazilian Federal Court of Appeal of the 2nd Region.  *Id.* ¶ 107.  Meanwhile, in 2014, AHG also filed suit against Eletrobras in Brazil.  *Id.* ¶ 101.  AHG's suit has also been unsuccessful; it was dismissed the same year and is currently on appeal before the Brazilian Superior Tribunal de Justiça ("STJ").  *Id.* ¶¶ 101, 110.  After almost eight years, Plaintiffs' litigation in the Brazilian courts has effectively "gone nowhere."  *Id.* ¶ 92.

Plaintiffs blame their lack of success on both systemic issues in the Brazilian legal system and the Brazilian government's attempts to "intervene[] in or otherwise influence[]" the suits "to protect Eletrobras."  *Id.* ¶¶ 92-94.  But Eletrobras has suffered some setbacks in the Brazilian courts.  In 2019, in a case involving another Eletrobras creditor, for example, the STJ issued a decision (the "2019 STJ Decision") holding that the company must pay certain interest payments on all Compulsory Loan Credits that have not been converted into shares.  *Id.* ¶¶ 8, 112.  Eletrobras has sought reconsideration of that decision.  *Id.* ¶ 118.  Meanwhile, although the 2019 STJ Decision concerned Compulsory Loan Credits (which Plaintiffs do not appear to hold themselves), Plaintiffs have read the decision to "strongly suggest[] that the decision could apply to the Bearer Bonds as well."  *Id.* ¶ 116.  Indeed, many of Plaintiffs' allegations in this case regarding Defendants' misrepresentations have to do with Eletrobras's failure to acknowledge the import of the 2019 STJ Decision.  *See, e.g.*, *id.* ¶¶ 9-10, 12, 15.

For its part, Eletrobras has consistently denied that it owes anything to Plaintiffs or holders of Compulsory Loan Obligations.  Plaintiffs allege that these statements are false, misleading, or contain material omissions.  In particular, Plaintiffs point to statements in Securities and Exchange Commission ("SEC") filings, which Eletrobras was required to make because its ADRs trade in the United States.  *Id.* ¶ 26.  For example, in its 2018 Form 20-F annual report, which was signed by the Individual Defendants, Eletrobras represented that the Bearer Bonds were invalid and unenforceable and that Eletrobras had no liability under the Bearer Bonds.  *Id.* ¶ 119-121; *see also id.* ¶¶ 122-87,

308.  Similarly, Eletrobras disclaimed liability for the Bearer Bonds in its Form 20-F Annual

Reports for the years 2007 through 2017.  *Id.* ¶¶ 220-32, 309.  Plaintiffs also take issue with the

following statements in Eletrobras' Form 6-K filings:

    (1) a June 12, 2019 Market Announcement (filed with the SEC on June 13, 2019) in which
        Eletrobras denied that the 2019 STJ Decision would affect other Compulsory Loan
        Obligation proceedings, *id.* ¶¶ 188-97, 310;

    (2) a "2Q19 Marketletter" filed with the SEC on August 14, 2019 (and an amended version filed
        on September 3, 2019), in which Eletrobras omitted mention of the 2019 STJ Decision and
        its potential impact on Eletrobras's liabilities in connection with the Compulsory Loan
        Obligations, *id.* ¶¶ 198-203, 209-13, 312;

    (3) a September 2, 2019 Market Announcement (filed with the SEC on September 3, 2019)
        repeating Eletrobras's view that the 2019 STJ Decision had no effect on other investors or
        lawsuits, *id.* ¶¶ 204-08, 310; and

    (4) a "3Q19 Marketletter" filed with the SEC on November 12, 2019, in which Eletrobras again
        omitted mention of the 2019 STJ Decision and its potential impact on Eletrobras's liabilities,
        *id.* ¶¶ 214-19, 312.

Finally, Plaintiffs also allege that Defendants failed to maintain adequate internal controls over

financial reporting, *id.* ¶¶ 233-40, and that Defendants made false or misleading statements about

their compliance with Eletrobras's internal disclosure policy, *id.* ¶¶ 241-47.[1]

      At some point in 2019, Plaintiffs acquired a total of 2,937 Eletrobras ADRs on the NYSE.

*Id.* ¶¶ 24-25.  Not long thereafter, Plaintiffs filed this suit.  In their operative Complaint, they bring

three claims under the federal securities fraud laws.  First, they allege that Defendants have made

false or misleading statements (or omitted material facts necessary to make the statements not

misleading) with respect to Eletrobras's Compulsory Loan Obligations, in violation of Section 10(b)

of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule

---

[1]     The Complaint also alleges that the Brazilian government is pushing to privatize Eletrobras.
*Id.* ¶¶ 14, 279.  Plaintiffs allege that the privatization — which is "imminent" and expected to yield
over $4 billion in proceeds — may dilute shareholders' and debtholders' interests and will
"exacerbate Eletrobras'[s] already-fragile financial situation."  *Id.* ¶¶ 14, 300, 315.

10b-5(b), 17 C.F.R. § 240.10b-5(b).  FAC ¶¶ 306-17.  Second, they allege that Defendants have

employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of

business that operated as a fraud or deceit upon Plaintiffs in connection with the purchases of

Eletrobras securities in violation of Section 10(b) and Rule 10b-5(a) and (c), 17 C.F.R. §§ 240.10b-

5(a), (c).  FAC ¶¶ 318-24.  And finally, Plaintiffs bring control person claims against the Individual

Defendants under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  FAC ¶¶ 325-332.

Significantly, Plaintiffs do not seek money damages in connection with their federal claims; instead,

they seek only injunctive and declaratory relief.  *Id.* ¶¶ 317, 324, 332, 348; *see also* ECF No. 43

("Pls.' Opp'n"), at 6, 9.[2]

## LEGAL STANDARDS

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of

the plaintiff[s]."  *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319-20 (S.D.N.Y. 2012) (citing

*Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)).  The Court will not dismiss any claims

pursuant to Rule 12(b)(6) unless Plaintiffs have failed to plead sufficient facts to state a claim to

relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one

that contains "factual content that allows the [C]ourt to draw the reasonable inference that the

---

[2]     Following Defendants' reply, Plaintiffs moved for leave to file a sur-reply "to (1) address
certain arguments made, in part, for the first time in Defendants' Reply Memorandum of Law and
(2) update the Court on recent developments and filings by Defendants since Plaintiffs' Opposition
was filed."  ECF No. 49, at 1 (citations omitted).  The Court granted the motion, but noted that it
would "consider" the sur-reply "only to the extent that it responds to arguments made for the first
time in Defendants' reply and new filings since Plaintiffs filed their opposition."  ECF No. 50, at 2.
Upon review of the reply and sur-reply, *see* ECF No. 47 ("Defs.' Reply"); ECF No. 52 ("Pls.' Sur-
Reply"), the Court declines to consider the latter to the extent that it responds to arguments in the
former (except in one limited respect referenced below).  Each of the arguments in the reply to
which the sur-reply responds was made, in the first instance, in Defendants' opening memorandum
of law.  In any event, were the Court to consider the sur-reply, it would not affect the analysis or the
conclusion of this Opinion and Order.

defendant[s are] liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

More specifically, Plaintiffs must allege facts showing "more than a sheer possibility that [the]

defendant[s have] acted unlawfully." *Id*.  A complaint that offers only "labels and conclusions" or

"a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Further, if Plaintiffs have not "nudged their claims across the line from conceivable to plausible,

[those claims] must be dismissed." *Id*. at 570.[3]

## FEDERAL CLAIMS

As noted, Plaintiffs bring federal securities fraud claims under Sections 10(b) and 20(a) of

the Exchange Act as well as SEC Rule 10b-5.  To state a claim under Section 10(b) and Rule 10b-5,

a private plaintiff must generally allege "(1) a material misrepresentation or omission by the

defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the

purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic

loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)

(internal quotation marks omitted); *see IBEW Local Union No. 58 Pension Tr. Fund & Annuity*

*Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  To state a claim under

Rule 20(a), a plaintiff must, at a minimum, plead a plausible "primary violation" of Section 10(b).

*E.g.*, *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014)

(internal quotation marks omitted); *see also* 15 U.S.C. § 78t(a).

---

[3]     Although it is not relevant to the issues here, because Plaintiffs allege securities fraud, they
must also satisfy the heightened pleading requirements of both Rule 9(b) of the Federal Rules of
Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4.

Plaintiffs hold two different Eletrobras securities — the Bearer Bonds and the ADRs — and arguably bring separate securities fraud claims with respect to each.[4]  The Court will address these claims in turn, albeit in reverse chronological order of when Plaintiff purchased them.

## A.  The ADRs

Plaintiffs' Section 10(b) and Rule 10b-5 claims based on their purchases of the ADRs fail for at least two reasons.  First and foremost, Plaintiffs fail to allege a cognizable form of injury.  Plaintiffs argue that because they seek only injunctive and declaratory relief, they do not need to allege money damages.  Pls.' Opp'n 13.  That may true, but — as the very case Plaintiffs cite, *Packer v. Yampol*, 630 F. Supp. 1237 (S.D.N.Y. 1986), makes plain — they do still need to allege an injury to state a claim.  In *Packer*, the plaintiffs — like those in this case — sought only injunctive and declaratory relief, alleging that the defendants had caused the price of the security in question to be "artificially inflated."  *Id.* at 1239-40.  Nevertheless, the court held that it was still "necessary" for "plaintiffs [to] allege that they ha[d] suffered *some kind of harm*."  *Id.* at 1241 (emphasis added).  The court rejected the notion that allegations about the investing public's inability to accurately value the security somehow "conferred standing on all shareholders . . . to correct fraudulent practices" by seeking injunctive relief "for the benefit of the investing public."  *Id.* at 1242.  The court explained that cases in which courts had generally relaxed pleading requirements to permit Section 10(b) claims for injunctive relief — many of which Plaintiffs rely on here — did not excuse the plaintiffs from having to allege that the alleged violation would cause them some harm.  *Id.* at 1241-43.  Finding that the plaintiffs had failed to do so, the court dismissed the case.  *Id.* at 1238; *see also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186

---

[4]     Defendants suggest that the Bearer Bonds may not qualify as "securities" within the meaning of the federal securities fraud laws.  ECF No. 37 ("Defs.' Mem."), at 2-3.  For purposes of this Opinion and Order, the Court assumes without deciding that the Bearer Bonds do qualify.

F.3d 157, 173 (2d Cir. 1999) ("[A]lthough appellants requested injunctive relief only and not monetary damages, they were nonetheless required to demonstrate an injury of some sort in order to sustain their Rule 10b-5 claim.").

As in *Packer*, Plaintiffs here fail to allege they suffered a cognizable injury.  Plaintiffs allege that Defendants' statements about the unenforceability of the Bearer Bonds caused the value of the ADRs they purchased to be "falsely inflated."  FAC ¶¶ 317, 324, 332.  It is well established, however, that "[a] plaintiff cannot satisfactorily allege loss causation simply by alleging that she purchased securities at artificially inflated prices."  *In re GeoPharma, Inc. Sec. Litig*., 399 F. Supp. 2d 432, 444 (S.D.N.Y. 2005).  This is because, "at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value."  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (emphasis omitted).  Nor does Plaintiffs' argument that the false inflation of their ADRs "ma[de] it impossible for them to accurately value . . . their securities" constitute injury.  Pls.' Opp'n 13.  Indeed, the argument is little more than a repackaging of the argument expressly rejected in *Packer.  See* 630 F. Supp. at 1242.

Plaintiffs other theories of injury fare no better.  They allege that Defendants' misrepresentations are "threatening imminent harm to the value" of their ADRs and are "deterring Plaintiffs from purchasing" more.  Pls.' Opp'n 13.  These claims are a bit rich, however, coming from parties seeking relief — namely, a declaration that the Bearer Bonds are valid and enforceable — that would transfer massive value *from* holders of ADRs and other equities *to* holders of the Bearer Bonds.  *See, e.g.*, *id.* (arguing that the alleged reduction in value of Bearer Bonds and Compulsory Loan Credits "correspond[s]" to the alleged inflation of Eletrobras ADRs and stock). That is, "[i]ronically, the very relief that [P]laintiffs seek[] could become the cause of their only injury."  *Packer*, 630 F. Supp. at 1241.  Additionally, it is black-letter law that Plaintiffs cannot sue

under Section 10(b) and Rule 10b-5 for having been deterred from purchasing additional securities.

These provisions "do[] not afford relief to those who forgo a purchase or sale" of a security.  *Metro.*

*Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1525 (S.D.N.Y. 1989); *see also Ruff v.*

*Genesis Holding Corp.*, 728 F. Supp. 225, 229 (S.D.N.Y. 1990) (holding that absent a contractual

right to "exercise a put, call, or option to buy stock," a plaintiff cannot bring a claim for securities

fraud).

Finally, Plaintiffs argue that Defendants' alleged misrepresentations and omissions harmed

(and continue to harm) them because (1) they have reduced the value of their Bearer Bonds, so

much so that they cannot redeem, sell, or transfer them; and (2) they have made it impossible to

accurately value their Bearer Bonds.  Pls. Opp'n 13.  But separate and apart from the weaknesses in

these arguments on their own terms (some of which are discussed above in connection with

Plaintiffs' other theories of injury), the securities fraud laws do not permit Plaintiffs to mix and

match in this way.  To state a claim relating to their ADRs, Plaintiffs have to allege a cognizable

injury to them arising *from the ADRs themselves.*  They cannot state a claim of fraud "in connection

with the purchase or sale of" one security by alleging harms relating to another security altogether.

15 U.S.C. § 78j(b); *see Simon DeBartolo*, 186 F.3d at 173 (holding that when a plaintiff's Rule 10b-

5 claims pertain to its status as a tender offeror, alleged injuries related to its status as a shareholder

were not relevant); *Levitin v. PaineWebber, Inc.*, 933 F. Supp. 325, 328 (S.D.N.Y. 1996) ("To

satisfy [the 'in connection with'] requirement, the misrepresentation or omission must pertain to the

securities themselves; allegations of fraud merely involving securities are not sufficient."), *aff'd*,

159 F.3d 698 (2d Cir. 1998)

In any event, Plaintiffs' ADR-related claims are subject to dismissal for a second,

independent reason: Plaintiffs do not allege reliance.  In fact, Plaintiffs *cannot* plausibly allege that

they relied on any misrepresentations or omissions when they purchased the ADRs in 2019 because,

on their telling, they already knew of any such misrepresentations and omissions.  After all, by the

time they purchased the ADRs, they had spent up to six years challenging Defendants' position (and

thus the truth of their statements) regarding the unenforceability of the Bearer Bonds and

Compulsory Loan Obligations in the Brazilian courts.  In other words, Plaintiffs affirmatively

*disbelieved* the statements at issue, and purchased the ADRs *despite* the statements — not in

reliance on them.  Notably, Plaintiffs do not even attempt to argue otherwise.  Instead, once again,

they invoke the fact that they seek only injunctive and declaratory relief, and not money damages;

as a result, they contend, they do not need to allege reliance at all.  Pls.' Opp'n 12-13.[5]  That is

incorrect.  The Second Circuit has reaffirmed that to maintain a Section 10(b) and Rule 10b-5 claim

for alleged misrepresentations — even in a case where a plaintiff seeks only injunctive relief — the

plaintiff "has the burden of pleading and proving reasonable reliance."  *Simon DeBartolo*, 186 F.3d

at 173; *see also Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008) ("Reliance

by the plaintiff[s] upon the defendant[s'] deceptive acts is an essential element of the § 10(b) private

cause of action.  It ensures that, for liability to arise, the requisite causal connection between a

defendant's misrepresentation and a plaintiff's injury exists as a predicate for liability." (internal

quotation marks omitted)).

---

[5]     In their Complaint, Plaintiffs invoke the fraud-on-the-market theory of reliance recognized in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  FAC ¶¶ 303-04.  As Defendants argue, however, that theory has no application where, as here, "it is clear that the plaintiff 'affirmatively disbelieved the Defendants' misrepresentations' at the time of the relevant transaction."  Defs.' Mem. 28 (quoting *Tiberius Capital, LLC v. PetroSearch Energy Corp.*, No. 09-CV-10270 (GBD), 2011 WL 1334839, at *6 (S.D.N.Y. Mar. 31, 2011), *aff'd*, 485 F. App'x 490 (2d Cir. 2012) (summary order)); *see Basic Inc.*, 485 U.S. at 249 ("[A] plaintiff who believed that Basic's statements were false . . . could not be said to have relied on the integrity of a price he knew had been manipulated.").  Conspicuously, Plaintiffs do not even respond to Defendants' argument in their memorandum of law.  Thus, their reliance on the fraud-on-the-market theory is not only wrong, but also abandoned.  *See, e.g.*, *Martinez v. City of New York*, No. 11-CV-7461 (JMF), 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted)).

The cases Plaintiffs cite to support their argument to the contrary are inapposite or outdated. *See* Pls.' Opp'n 12-13.  Plaintiffs cite a pair of enforcement actions brought by the SEC.  *See S.E.C. v. Hilsenrath*, No. 03-CV-03252 (WHA), 2008 WL 2225709, at *5 (N.D. Cal. May 29, 2008), *aff'd*, 406 F. App'x 197 (9th Cir. 2010); *S.E.C. v. Am. Beryllium & Oil Corp.*, 303 F. Supp. 912, 920 (S.D.N.Y. 1969).  It is well established, however, that "the securities laws apply differently to the SEC than they do to a private plaintiff, because Congress designated the SEC as the primary enforcement agency for the securities laws."  *S.E.C. v. Prater*, 296 F. Supp. 2d 210, 215 (D. Conn. 2003) (internal quotation marks omitted).  Indeed, Plaintiffs' own cases make plain that their holdings are limited to actions initiated by the SEC.  *See Hilsenrath*, 2008 WL 2225709, at *5 ("The SEC does not have to prove reliance . . . in a SEC action seeking injunctive relief against Section 10(b) and Rule 10b-5 violations."); *Am. Beryllium & Oil Corp.*, 303 F. Supp. at 920 ("[P]roof of reliance upon the misrepresentations is not a necessary element of the violation of Rule 10b-5 where the SEC seeks injunctive relief, *regardless of what may be required to maintain a private action*." (emphasis added)).  Otherwise, Plaintiffs cite two cases from over a half century ago for the proposition that "[i]t is not necessary in a suit for equitable or prophylactic relief to establish all the elements required in a suit for monetary damages."  *Mut. Shares Corp. v. Genesco*, 384 F.2d 540 (2d Cir. 1967) (internal quotation marks omitted); *see Britt v. Cyril Bath Co.*, 417 F.2d 433, 436 (6th Cir. 1969).  But these cases do not support the weight that Plaintiffs place on them — particularly, as discussed below, following the Supreme Court's later decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).

For each of these reasons — lack of cognizable injury and lack of reliance — Plaintiffs' ADR-related Section 10(b) and Rule 10b-5 claims must be and are dismissed.

11

## B.  The Bearer Bonds

The Court turns, then, to the Bearer Bonds.  As a threshold matter, Plaintiffs appear to have

dropped any claims based on the Bearer Bonds themselves.  In their Complaint, Plaintiffs allege that

Defendants' "false and/or misleading statements and/or omissions of material facts" caused "the

value of the Bearer Bonds" to be "significantly diminished," as Plaintiffs "cannot economically

redeem, sell, or transfer the Bonds."  FAC ¶¶ 316, 323, 331.  But in their opposition papers,

Plaintiffs repeatedly state that their Exchange Act claims "are not based on the Bearer Bonds."  Pls.'

Opp'n 9 (internal quotation marks omitted); *accord id.* at 10; Pls.' Sur-Reply 2 (confirming that

Plaintiffs' initial memorandum of law "accurately not[ed] that their claims are not 'based on the

Bearer Bonds'").  *But see* Pls.' Opp'n 10 (referring to "claims for declaratory and future injunctive

relief 'based on the Bearer Bonds'"); *accord id.* at 12.  In light of these unambiguous statements,

the Court concludes that Plaintiffs have disclaimed, or abandoned, any claims based on the Bearer

Bonds themselves that might be alleged in the Complaint.  *See, e.g.*, *Islam v. Fischer*, No. 07-CV-

3225 (PKC), 2008 WL 2600054, at *3 (S.D.N.Y. June 25, 2008); *see also, e.g.*, *Campbell v. Drink

Daily Greens, LLC*, No. 16-CV-7176 (ILG), 2018 WL 4259978, at *6 (E.D.N.Y. Sept. 4, 2018);

*Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956 (RPP), 2014 WL 837050, at

*11 (S.D.N.Y. Mar. 3, 2014).[6]

---

[6]      Although the Bearer Bonds are not the basis of any claims *per se*, Plaintiffs assert that the
Bonds are relevant because it is their ownership interest in "both Bearer Bonds . . . and ADRs" that
gives them "standing."  Pls.' Opp'n 9 (emphasis omitted); *accord id.* at 14.  It is not clear whether
Plaintiffs refer here to Article III standing or statutory standing (a term that is no longer in favor).
*See Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 111 (2d Cir. 2018).  But more
fundamentally, it is not clear what Plaintiffs even mean, unless they are referring obliquely to their
argument that Defendants' alleged misrepresentations and omissions caused them injury because
the misrepresentations and omissions led to a decline in the value of their Bearer Bonds (injury
being an element of Article III standing).  As discussed above, however, Plaintiffs cannot state a
claim of fraud in connection with the purchase or sale of one security — the ADRs — by alleging
harms relating to another security — the Bearer Bonds.

In any event, to the extent that Plaintiffs do continue to press securities fraud claims based on the Bearer Bonds, such claims fail as a matter of law either because they do not satisfy the purchaser-seller rule or because Plaintiffs fail to allege that they purchased the Bearer Bonds in reliance on Defendant's misrepresentations or omissions.  The Second Circuit has long held that Section 10(b) is "directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that [Rule 10b-5] extended protection only to the defrauded purchaser or seller."  *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir. 1952).  In *Blue Chip Stamps*, 421 U.S. 723, the Supreme Court endorsed that rule, holding that Section 10(b) and Rule 10b-5 are limited to plaintiffs who either purchase or sell securities.  *Id.* at 732-49.  The Court found support for that limitation in "the wording of § 10(b), . . . which is directed toward injury suffered 'in connection with the purchase or sale' of securities," and in Congress's rejection of proposals by the SEC after *Birnbaum* to broaden the language of the statute.  *Id.* at 733 (quoting 15 U.S.C. § 78j(b)).  It found further support in prudential and policy considerations: "the danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b-5," *id.* at 740; the fact that a shareholder's intention to buy or sell — unlike an actual purchase or sale — is not documented or verifiable, and would turn largely on oral testimony about subjective intentions, *see id.* at 742; and the pressures to settle arising from the ability of even frivolous litigation to "frustrate or delay normal business activity," *id.* at 740.

Most of Plaintiffs' Bearer Bonds claims (if any) plainly fail in light of the purchaser-seller rule.  Eagle purchased its Bearer Bonds on May 6, 2008, FAC ¶ 86, which is prior to the earliest alleged misrepresentation or omission (on July 21, 2008), *id.* ¶ 221.  It follows *a fortiori* that Eagle's claims are not made in connection with the purchase or sale of the Bearer of Bonds.  *See Amorosa v. Ernst & Young LLP*, 672 F. Supp. 2d 493, 510 (S.D.N.Y. 2009) (observing that, in light

13

of the purchaser-seller rule, a plaintiff's claims are effectively "limit[ed] . . . to misstatements or omissions by [the defendant] that he could have relied upon in connection with his purchase or sale of stock (i.e., that are alleged to have occurred *prior to* the purchase and/or sale dates)." (emphases omitted and added)), *aff'd sub nom. Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412 (2d Cir. 2011) (summary order).  AHG, meanwhile, purchased its Bearer Bonds in November 2013, FAC ¶ 87, which means that any claims based on misrepresentations or omissions after that date (the primary ones at issue here) would run afoul of the rule.  As for those that occurred before, Plaintiffs do not allege reliance.  Nor could they plausibly do so, as it would defy common sense to purchase the Bearer Bonds in reliance on Defendants' statements that they are unenforceable and thus worthless.  *See, e.g.*, *Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005) (reliance must be "justifiable").  Thus, Plaintiffs fail to state a securities fraud claim with respect to the Bearer Bonds.

Notably, Plaintiffs do not argue that they satisfy the purchaser-seller rule or that they allege reliance.  Instead, in a now-familiar refrain, they contend that these requirements do not apply because they seek only declaratory and injunctive relief for their Exchange Act claims.  Pls.' Opp'n 10-13.  In fairness to Plaintiffs, that contention finds support in *Mutual Shares Corp.*, 384 F.2d 540, decisions from other circuits adopting the holding in *Mutual Shares Corp.*, *see Davis v. Davis*, 526 F.2d 1286, 1290 (5th Cir. 1976); *Kahan v. Rosenstiel*, 424 F.2d 161, 173 (3d Cir. 1970); *Britt*, 417 F.2d at 436, and a handful of district court decisions, *see, e.g.*, *Langner v. Brown*, 913 F. Supp. 260, 270 (S.D.N.Y. 1996).  In the Court's view, however, these decisions are no longer good law following the Supreme Court's decision in *Blue Chip Stamps*, substantially for the reasons stated by Judge Castel in his thorough and well-reasoned opinion in *Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477, 484-90 (S.D.N.Y. 2014), and by the D.C. Circuit in the one and only court of appeals decision to squarely address the issue since the Supreme Court's decision, *see Cowin v.*

14

*Bresler*, 741 F.2d 410, 424-25 (D.C. Cir. 1984) (Bork, J.).  *See also Sinovac Biotech Ltd. v. 1Globe*

*Capital LLC*, No. 18-CV-10421 (NMG), 2018 WL 5017918, at *5 (D. Mass. Oct. 15, 2018); *Taser*

*Int'l, Inc. v. Stinger Sys., Inc.*, No. 2:09-CV-0289 (KJD) (PAL), 2010 WL 11578754, at *4 (D. Nev.

Mar. 25, 2010); *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 659 (D.N.J. 2009); *cf. Glob.*

*Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99-CV-342 (DLC), 1999 WL 544708, at *8

(S.D.N.Y. July 27, 1999) ("[S]ince the Supreme Court's decision in *Blue Chip*, the Second Circuit

has not authorized an action for injunctive relief unless the complainant was a purchaser or seller of

securities.").  Thus, the Court concludes that the purchaser-seller rule (and the reliance requirement)

apply to Plaintiffs' federal securities fraud claims notwithstanding the fact that they seek only

injunctive and declaratory relief and that any claims they still bring in connection with the Bearer

Bonds must therefore be dismissed.

*   *   *   *   *   *

Accordingly, and for the reasons discussed above, all of Plaintiffs' Section 10(b) and Rule

10b-5 claims must be and are dismissed.[7]  It follows that their control-person liability claims under

Section 20(a) must also be dismissed.  *See, e.g.*, *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450,

1472 (2d Cir. 1996) ("In order to establish a prima facie case [under Section 20(a)], a plaintiff must

show a primary violation . . . ."); *accord Marcu v. Cheetah Mobile Inc.*, No. 18-CV-11184 (JMF),

2020 WL 4016645, at *6 (S.D.N.Y. July 16, 2020).[8]

---

[7]     In light of that, the Court need not and does not consider Defendants' alternative arguments
for dismissal, including their arguments that the Bearer Bonds claims (if there are any) are time
barred, *see* Defs.' Mem. 8-11, or impermissibly extraterritorial in light of *Morrison v. National
Australia Bank Ltd.*, 561 U.S. 247 (2010), *see id*. at 13-16, or that all claims should be dismissed
under the doctrine of *forum non conveniens*, *see id.* at 30-40.

[8]     Plaintiffs arguably also raise a standalone claim pursuant to the Declaratory Judgment Act,
seeking a declaration that (1) Defendants' statements in their SEC filings about the Bearer Bonds
being invalid or unenforceable are false or misleading, and (2) the Bearer Bonds are, in fact, valid
and enforceable.  FAC ¶¶ 348-49.  The Declaratory Judgment Act, 28 U.S.C. § 2201, "provides no
independent basis for subject matter jurisdiction."  *Niagara Mohawk Power Corp. v. Tonawanda*

## STATE-LAW CLAIMS

That leaves only Plaintiffs' state-law claims.  In light of the Court's dismissal of Plaintiffs'

federal claims, the Court declines to exercise supplemental jurisdiction over their state-law claims.

Pursuant to Title 28, United States Code, Section 1367, a district court has discretion over whether

to exercise jurisdiction over state-law claims "that are so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy under Article III of the

United States Constitution."  28 U.S.C. § 1367(a).  The Supreme Court and the Second Circuit have

made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state

claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d

Cir. 1998) (per curiam) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Here,

there is no basis to depart from that general rule.  Given the relatively early stage of the case, the

traditional "values of judicial economy, convenience, fairness, and comity" that the Court must

consider do not counsel in favor of exercising jurisdiction.  *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 (1988).  Accordingly, Plaintiffs' state-law claims are dismissed.  *See* 28 U.S.C. §

1367(c); *see also, e.g.*, *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (recognizing that if a

plaintiff's federal claims are dismissed before trial and there has not been a substantial expenditure

of resources on the state claims, the latter should generally be dismissed as well); *Banco Safra S.A.-*

*Cayman Islands Branch v. Andrade Gutierrez Int'l S.A.*, No. 16-CV-9997 (JMF), 2018 WL

1276847, at *5 (S.D.N.Y. Mar. 8, 2018) (dismissing state-law claims where all federal claims, for

securities fraud, had been dismissed).

---

*Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996).  In fact, the Declaratory Judgment Act's
"operation is procedural only — to provide a form of relief previously unavailable."  *In re Joint E.*
*& S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  Accordingly, to the extent Plaintiffs do
bring a standalone claim under the Declaratory Judgment Act, it must be and is dismissed along
with Plaintiffs' other federal claims.

**CONCLUSION**

At bottom, it is plain that Plaintiffs' primary (if not sole) aim is to get from this Court what they have not been able to get from the Brazilian courts: a ruling that the Bearer Bonds are valid and enforceable.  Whether or not it would otherwise be appropriate for this Court to grant Plaintiffs that relief, their efforts to recast their grievances as securities fraud claims under American law fall short for the reasons discussed above.  Accordingly, Defendants' motion to dismiss is granted and Plaintiffs' Complaint is dismissed in its entirety.

Moreover, that dismissal is without leave to amend, for several reasons.  First, given the grounds for the Court's decision, amendment would almost certainly be futile.  *See, e.g.*, *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."); *Banco Safra*, 2018 WL 1276847, at *4 (refusing to grant leave to amend in a securities fraud case where the plaintiffs failed to indicate that amendment would cure pleading deficiencies).  Second, although Plaintiffs request leave to amend, *see* Pls.' Opp'n 40 n.31, they do not give "any indication that [they are] in possession of facts that would cure the problems identified in this opinion," *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.").  And finally, in its previous Order granting Plaintiffs leave to file an amended complaint, ECF No. 27, the Court expressly warned that Plaintiffs would not be given another opportunity to address the issues raised in Defendants' motion to dismiss, *see, e.g.*, *Clark*, 2014 WL 4054284, at *15 (holding that the plaintiff's failure to remedy the complaint's deficiencies identified by an earlier motion to dismiss "is alone sufficient ground to deny leave to amend"); *see also, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (affirming the district

17

court's denial of leave to amend in part because of previous opportunities that the plaintiff had

received to amend the complaint).

The Clerk of Court is directed to terminate ECF No. 36, to enter judgment in favor of

Defendants, and to close this case.


SO ORDERED.

Dated: February 3, 2021
      New York, New York                                JESSE M. FURMAN
                                          United States District Judge

18